1

2

3

4

5                          **UNITED STATES DISTRICT COURT**

6                          EASTERN DISTRICT OF CALIFORNIA

7

8   PRINCIPAL LIFE INSURANCE                    Case No. 1:19-cv-00147-DAD-SKO
    COMPANY,
9                                               **ORDER ON PLAINTIFF'S MOTION**
              Plaintiff,                        **FOR ORDER OF DISCHARGE,**
10                                              **DISMISSAL WITH PREJUDICE, AND**
         v.                                     **AWARD OF COSTS AND ATTORNEY'S**
11                                              **FEES**
    RAYMOND CALLOWAY, BERNICE
12  ENGLISH, FANNIE M. BEARD, ESTHER            (Doc. 109)
    M. LEE, ROSE MARY PORTIS, RONALD
13  CALLOWAY, DAISY CALLOWAY,
    RODNEY CALLOWAY, J.D. FLORENCE,
14  JR., and the ESTATE OF GENEVA
    PERKINS,
15
              Defendants.
16
    _____/
17

18                    **I.      INTRODUCTION**

19          The matter before the Court is Plaintiff Principal Life Insurance Company ("Plaintiff")'s

20  "Motion for Order of Discharge, Dismissal with Prejudice and Award of Costs and Attorney Fees."[1]

21  (Doc. 109.)  No defendant in this action submitted an opposition to Plaintiff's motion, so the motion

22  is therefore deemed unopposed.  The Court reviewed the motion and all supporting material and

23  found the matter suitable for decision without oral argument.  The hearing set for January 13, 2021,

24  was therefore vacated.[2]  (Doc. 117.)

25          Having considered the briefing, and for the reasons set forth below, Plaintiff's motion for

26  _____

27  [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 108.)
    [2] Plaintiff's motion was initially filed on September 29, 2020, and set to be heard on November 18, 2020.  (Docs. 109
28  & 111.)  Due to their pro se status, some defendants did not receive notice of the hearing or the deadline to file an
    opposition to the motion, and the hearing was continued to January 13, 2021.  (Doc. 114.)

discharge and dismissal will be granted and Plaintiff's motion for attorneys' fees will be granted in part in a reduced amount.

## II.   BACKGROUND[3]

Geneva Perkins ("Decedent") had an annuity with Plaintiff (the "Annuity") since 2008. (Doc. 109-1 at 2.)   The application for the Annuity originally designated Decedent's nephew, Raymond Calloway ("Raymond"), as the primary beneficiary.   (*Id.*)   In the ensuing years, the beneficiary of the Annuity changed several times, with each of Bernice English, Fannie Beard, Esther M. Lee, Rose Mary Portis, Ronald Calloway ("Ronald"), Daisy Calloway ("Daisy"), Rodney Calloway ("Rodney"), and J.D. Florence, Jr. ("Florence") having been named the primary beneficiary or beneficiaries at one point.   (*Id.* at 2–4.)   In 2015, allegations of elder abuse of Decedent were raised, in addition to questions about Decedent's competency, and in 2016, Plaintiff changed the beneficiary on the Annuity to Decedent's estate.   (*Id.* at 3, 5.)

Decedent died on November 18, 2018.   (Doc. 109-1 at 5.)   Raymond, Beard, Lee, Portis, Ronald, Daisy, Rodney, and Florence (collectively, "Defendants") have not been able to reach an agreement regarding the proceeds of the Annuity.[4]   (*Id.* at 5.)   Unable to determine the proper beneficiary, Plaintiff filed this interpleader action against Defendants on February 1, 2019.   (Doc. 1.)   On May 19, 2020, the Court received from Plaintiff the interpleader deposit in the amount of $115,448.94, which is the annuity benefit payable under the Annuity plus interest.[5]   (Doc. 70.)   On September 29, 2020, Plaintiff filed the instant motion.   (Doc. 109.)

## III.   DISCUSSION

"In an interpleader action, the 'stakeholder' of a sum of money sues all those who might have claim to the money, deposits the money with the district court, and lets the claimants litigate who is entitled to the money."   *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1265 (9th Cir. 1992).   "The main purpose of interpleader actions is to protect the stakeholder from the expense of multiple lawsuits and from having to contend with inconsistent or multiple determinations of

---

[3] Facts set forth in the background section are taken from the motion.

[4] After learning that English passed away in June 2009, Plaintiff voluntarily dismissed her from the action.   (*See* Docs. 32 & 34.)

[5] On May 27, 2020, the Court ordered that $5,000 of the deposited funds be disbursed to Daniel L. Harralson, Esq., counsel for defendant Estate of Geneva Perkins, as a retainer for his representation.   (Doc. 77.)

1  liability." *Field v. United States*, 424 F. Supp. 3d 904, 907 (E.D. Cal. 2019).  "Procedurally, an

2  interpleader action encompasses two stages.  First, the court determines the propriety of

3  interpleading the adverse claimants and relieving the stakeholder from liability.  The second stage

4  involves an adjudication of the adverse claims of the defendant claimants." *Metro. Life Ins. Co. v.*

5  *Billini*, No. 2:06–cv–02918 WBS KJM, 2007 WL 4209405, at *2 (E.D. Cal. Nov. 27, 2007)

6  (citations and internal quotation marks omitted).  The motion presently before this Court focuses on

7  the first stage of the interpleader process.  Plaintiff seeks: (1) to discharge itself from all liability

8  and be dismissed with prejudice from the litigation; (2) a permanent injunction from all future

9  related litigation; and (3) to recover attorneys' fees.  (Doc. 109-1.)

10  **A.    Jurisdiction**

11      Jurisdiction over an interpleader may be established in two distinct manners.

12      A "Rule interpleader" may be brought pursuant to Fed. R. Civ. P. 22 ("Rule 22").
        However, Rule 22 is a procedural device and does not alone establish subject-matter
13      jurisdiction.  Therefore, a Rule interpleader action is proper only when jurisdiction
        can be established under general statutes governing federal court jurisdiction.
14      Alternatively, subject-matter jurisdiction for a "Statutory interpleader" may be
        established pursuant to 28 U.S.C. § 1335 when there exists "minimal diversity"
15      between the claimants and the amount in controversy exceeds $500.

16  *Herman Miller, Inc. Ret. Income Plan v. Magallon*, No. 207CV00162MCEGGH, 2008 WL

17  2620748, at *2 (E.D. Cal. July 2, 2008) (citations omitted).

18      Here, Plaintiff does not plead facts establishing minimal diversity under 28 U.S.C. § 1335

19  but instead fashions the complaint and motion for discharge as a Rule 22 interpleader action based

20  on diversity jurisdiction pursuant to 28 U.S.C. § 1332 ("Section 1332").  (Doc. 1, ¶ 11; Doc. 109 at

21  6.)  Section 1332(a)(1) provides that the district courts shall have original jurisdiction over all civil

22  actions where the matter in controversy exceeds $75,000 and is between citizens of different states.

23  28 U.S.C. § 1332(a)(1).  Plaintiff pleads that it is incorporated in Iowa, with its principal place of

24  business in Des Moines, Iowa, Defendants are all California residents, and the value of the Annuity,

25  as of the date of Decedent's death, was $112,077.41.  (Doc. 1, ¶¶ 1–10, 39.)  Accordingly, the Court

26  has subject matter jurisdiction under Rule 22 over Plaintiff's interpleader complaint based on

27  diversity.

28  ///

**B.      Plaintiff's Motion for Discharge and Dismissal**

**1.      Legitimate Fear of Multiple Litigation or Multiple Liability as to the Annuity**

Rule 22(a)(1) pertains to interpleader actions by a plaintiff and states:

> Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

Fed. R. Civ. P. 22(a)(1).

"Interpleader is appropriate if the stakeholder-plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims.  This danger need not be immediate; any possibility of having to pay more than is justly due, no matter how improbable or remote, will suffice." *Prudential Ins. Co. of Am. v. Wells*, No. C09–0132 BZ, 2009 WL 1457676, at *2 (N.D. Cal. May 21, 2009) (citations and internal quotation marks omitted).  As such, "[t]he court's jurisdiction in an interpleader action extends both to potential and actual claims."  *United Investors Life Ins. Co. v. Grant*, No. 2:05–CV–1716–MCE–DAD, 2006 WL 1282618, at *2 (E.D. Cal. May 9, 2006).

Plaintiff has demonstrated that it has a real and legitimate fear of multiple litigation with regard to claims against the Annuity.  Each of the Defendants was named the primary beneficiary or beneficiaries of the Annuity at one point prior to Decedent's death (*see* Doc. 1 at 2–4; Docs. 1-2, 1-3, 1-4, 1-8, 1-10), and the suspicions of elder abuse and the unclear onset date of Decedent's incompetency (*see* Doc. 1 at 4–6; Docs. 1-7, 1-9, 1-11) raise questions about the validity of some of the beneficiary designations.  Given the multiple conflicting claims to the Annuity proceeds from the Defendants and the uncertainty as to whom the proper primary beneficiary (or beneficiaries), the Court finds that Plaintiff has met its burden of showing that it "may be exposed to double or multiple liability" under Rule 22(a)(1).  Thus, interpleader is proper.

**2.      Propriety of Discharge and Dismissal**

If the court determines that an interpleader is proper, it may discharge the stakeholder from further liability.  *Transamerica Life Ins. Co. v. Shubin*, No. 1:11–cv–01958–LJO–SKO, 2012 WL 2839704 at *6 (E.D. Cal. July 10, 2012); *see also Wells Fargo Bank v. PACCAR Fin. Corp.*, No.

1:08–cv–00904 AWI SMS, 2009 WL 211386, at *2 (E.D. Cal. Jan. 28, 2009) (explaining that in a rule interpleader action, "[i]f an interpleading plaintiff has no interest in the stake, the plaintiff should be dismissed").  "A court should readily discharge a disinterested stakeholder from further liability absent a stakeholder's bad faith in commencing an interpleader action, potential independent liability to a claimant, or failure to satisfy requirements of rule or statutory interpleader."  *OM Financial Life Ins. Co. v. Helton*, No. 2:09–cv–01989 WBS EFB, 2010 WL 3825655, at *3 (E.D. Cal. Sept. 28, 2010).

In support of discharge, Plaintiff contends that it is "an innocent stakeholder" whose only obligation is to pay out the Annuity proceeds, which it has deposited with the Court.  (*See* Doc. 109-1 at 6–7.)  The Court finds that Plaintiff has shown no other interests in the litigation or bad faith in initiating the proceedings.  Furthermore, no oppositions have been filed against Plaintiff's motion, and, as discussed above, the requirements of rule interpleader have been met.  Therefore, discharging Plaintiff from all liability and dismissing it with prejudice from the case is appropriate.

In "any civil action of interpleader," in addition to discharging the interpleading plaintiff from further liability, the court may enjoin the parties from instituting further related actions and make all other appropriate orders.  28 U.S.C. § 2361; *Great Am. Life Ins. Co. v. Brown-Kingston*, No. 218CV02783MCEKJN, 2019 WL 8137717, at *3 (E.D. Cal. May 14, 2019).  Plaintiff brought this interpleader action as a disinterested stakeholder solely to determine the proper part(ies) to receive the Annuity and to avoid potential future litigation.  Accordingly, the Court will enjoin all Defendants and future claimants from any future claims against Plaintiff related to the Annuity.

## C.     Plaintiff's Request for Attorneys' Fees

Plaintiff seeks $44,715.00 in attorneys' fees, which constitutes 38.7 percent of the interpleaded fund of $115,448.94.[6]  (Doc. 109 at 9.)  "Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action."  *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir.1984).  Fee awards in interpleader actions are "typically modest" because "there is an important policy interest in seeing that the fee award does not deplete

---

[6] The supplemental declaration in support of the motion states that Plaintiff is not seeking reimbursement of costs.  (Doc. 113 at 3.)

the fund at the expense of the party who is ultimately deemed entitled to it." *Trustees of Directors Guild of America–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426–27 (9th Cir. 2000); *see also Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1168 (N.D. Cal. 2012); *Billini*, 2007 WL 4209405, at \*3.  The Court "undertakes a lodestar analysis to guide its determination regarding the appropriate amount of attorneys' fees and costs." *Allianz Life Ins.*, F. Supp. 2d at 1168.  "The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Tise*, 234 F.3d at 426.  The Court addresses the reasonableness of Plaintiff's requested hourly rates and hours expended in turn.

### 1.   Hourly Rates

The burden of establishing entitlement to an attorneys' fee award lies solely with the claimant. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *see also Schwarz v. Secy. of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).  Thus, Plaintiff must establish that the requested rates are reasonable in the Eastern District of California, Fresno area.  *See Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) ("Generally, the relevant community is one in which the district court sits.").

"[H]ourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371 at \*4 (E.D. Cal. Dec. 17, 2014).  For attorneys with "less than ten years of experience, . . . the accepted range is between $175 and $300 per hour." *Id.* at \*4 (citing *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, No. 1:11–cv–01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)).

The declaration in support of the motion from Plaintiff's counsel Lisa Passalacqua provides rates and background information for four attorneys: Ms. Passalacqua, Edna Kersting, Adam

Ernette, and Stephanie Ferrari.  (Doc. 113 at 2–3.)  Ms. Passalacqua, seeking a rate of $300.00 per hour, has been a practicing attorney since 1992, and her practice focuses on life, health, and disability insurance and ERISA litigation.  (*Id.* at 2.)  Ms. Kersting, seeking a rate of $325.00 per hour, graduated from university in Germany in 1999 and received law degrees from the University of Illinois, College of Law in 2000 (LL.M.) and 2002 (J.D.); she is a partner at Wilson Elser and has represented Plaintiff since 2005.  (*Id.* at 2.)  Mr. Ernette, seeking a rate of $225.00 per hour, was a then-third-year associate, and Ms. Ferrari, seeking a rate of $205.00 per hour, was a then-first-year associate.  (*Id.* at 2.)

The Court finds that the requested rates for Ms. Passalacqua, who has been practicing law for nearly 30 years, and Ms. Kersting, who has been practicing for nearly 20 years in the United States, are within the rates found to be reasonable in other cases in the Fresno Division of the United States District Court for the Eastern District of California.  *See In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 841 (E.D. Cal. 2016).  The rates for Mr. Ernette and Ms. Ferrari, however, will be reduced.  Plaintiff has provided no information as to when either of them graduated law school or began practicing; Ms. Passalacqua's declaration states only that they were third- and first-year associates, respectively.  Based on this limited information, the Court finds that a rate of $195.00 per hour for Mr. Ernette, and $175.00 for Ms. Ferrari, to be reasonable.  *See Garcia v. FCA US LLC*, No. 1:16–CV–0730–JLT, 2018 WL 1184949, at *6 (E.D. Cal. Mar. 7, 2018) (adjusting hourly rate for an attorney who had been in practice for less than five years to $175).

### 2.      Hours Expended

In an interpleader action, "the scope of compensable expenses is limited[.]"  *Tise*, 234 F.3d at 426.  Expenses that may be reimbursed include preparing the complaint, obtaining service of process on the claimants, attending the Rule 26(f) conference, and preparing an order discharging the plaintiff from liability and dismissing it from the action.  *See Furia v. McGrew*, No. 2:19–CV–00942–JAM, 2020 WL 4208274, at *4 (E.D. Cal. July 22, 2020); *Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC*, No. CV099152SVWMANX, 2010 WL 11597568, at *6, 8 (C.D. Cal. June 10, 2010).  A fee applicant demonstrate that the requested hours were reasonably expended (*i.e.*, not duplicative, unproductive, excessive or otherwise unnecessary).  *Allianz Life*,

7

852 F. Supp. 2d at 1169 (citing *Hensley*, 461 U.S. at 434).

Plaintiff's motion does not provide a breakdown of the hours requested for each attorney, but Ms. Passalacqua's declaration indicates that she billed over 110.3 hours, Ms. Kersting billed over 30.2 hours, Mr. Ernette billed 1.3 hours, and Ms. Ferrari billed 5.3 hours. (*See* Doc. 109 at 8–9; Doc. 113 at 2.) The Court notes that the time records submitted by Plaintiff were organized only by date. As Plaintiff's counsel did not otherwise summarize or aggregate the hours spent on the aforementioned recoverable tasks, the Court has expended considerable time and resources in estimating the time spent by counsel on each of these tasks by examining the descriptions of the tasks in the contemporaneous billing records. Because the burden is on the fee applicant to demonstrate the reasonableness of the fees, any ambiguities in the time records (*i.e.*, where it was not clear to the Court what exactly counsel was working on) have been resolved against Plaintiff. *See Chase Inv. Servs. Corp.*, 2010 WL 11597568, at *8. Having thoroughly reviewed the time records, and for the reasons explained below, the Court finds that a significant reduction of the hours requested is warranted as some of the time billed for was either excessive or for tasks not compensable.

### a.   Clerical and Other Non-Compensable Tasks

Generally, work that is "clerical in nature . . . should [be] subsumed in firm overhead rather than billed" and is therefore not recoverable. *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Attorneys may not legitimately bill for clerical or secretarial work. *Z.F. by & through M.A.F.J.F. v. Ripon Unified Sch. Dist. (RUSD)*, No. 2:10–cv–00523–TLN–CKD, 2017 WL 1064679, at *6 (E.D. Cal. Mar. 21, 2017); *Lema v. Comfort Inn Merced*, No. 1:10–cv–01131–SMS, 2014 WL 1577042, at *6 (E.D. Cal. Apr. 17, 2014) (citing *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)). "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by nonlawyers[.]" *Lema*, 2014 WL 1577042, at *6.

Tasks deemed clerical include: reviewing court-generated notices; preparing documents for filing; filing documents; informing a client that a document has been filed; maintaining and pulling files; receiving, downloading, and emailing documents; and communicating with court staff. *Haw.*

*Motorsports Inv., Inc. v. Clayton Grp. Servs.*, 2010 WL 4974867, at *5 (D. Haw. Dec. 1, 2010); *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 831 (E.D. Cal. 2016) (non-compensable attorney functions include preparation of proofs of service, electronically filing documents, supervising the filing of documents, and preparing documents for mailing).  In addition, "charges for . . . reviewing and exchanging emails and other correspondence[] and reviewing the Court's docket are not appropriate." *Transamerica Life Ins. Co.*, 2012 WL 2839704, at *10.

By the Court's estimate, Plaintiff's counsel expended 54.2 hours on clerical and other non-compensable tasks, including preparing documents for service, reviewing court notifications and filed documents, and corresponding via email and telephone.  *See Protective Life Ins. Co. v. Alvarez*, No. 12–CV–1749–MMA–DHB, 2013 WL 526183, at *4 (S.D. Cal. Feb. 11, 2013) (deducting time for preparing and exchanging emails and other communications and reviewing "a five-line order on the Court's docket").  Also included in that total are 1.2 hours billed for substituting counsel of record—clearly clerical—and responding to the Court's October 22, 2019 Order to Show Cause (Doc. 24).  *See Dearmon v. Colvin*, No. 2:13–CV–0230 GEB CKD, 2013 WL 5703612, at *1 (E.D. Cal. Oct. 16, 2013) ("It is unreasonable to charge either defendant or plaintiff's client for hours attributable to the incompetence of plaintiff's counsel.  No award should be made for the 6.3 hours claimed in connection with the order to show cause.")

The Court notes that the bulk of the non-compensable time—35.4 hours—was for various correspondence via e-mail or telephone, including communications between Plaintiff's counsel and Defendants.  In concluding that the attorneys' fees billed for these expenditures are not recoverable, the Court is not suggesting that the communications were unnecessary or unhelpful in moving the case along.  Rather, the Court has determined only that, under applicable law, they are not recoverable.  *See Tise*, 234 F.3d at 426.  Indeed, "[i]n issuing policies and setting premiums, [an insurance company] must anticipate that conflicting claims will arise and that it will routinely be required to incur expenses to investigate and resolve such claims." *Billini*, 2007 WL 4209405, at *4.  "Providing claimants with information related to the claims process is simply part of the administrative tasks for disbursal of annuities like the one[] . . . purchased from Plaintiff, regardless of whether they are subject to interpleader." *Delaware Life Ins. Co. v. Moore*, No. 18CV944-L

1   (MSB), 2019 WL 762655, at *6 (S.D. Cal. Feb. 21, 2019).

2       A reduction of the hours requested is also warranted because the time billed for some of the

3   aforementioned tasks was not reasonable.  "[A] fee applicant must show that she exercised billing

4   judgment in the preparation of the attorney's fee application and that the requested hours were

5   reasonably expended."  *Allianz*, 852 F. Supp. 2d at 1169 (citing *Hensley*, 461 U.S. at 433 (1983)).

6   As demonstrated by the following examples, which the Court finds to be representative of Plaintiff's

7   counsel's billing practices, Ms. Passalacqua and Ms. Kersting failed to exercise appropriate

8   judgment in their application for fees.

9       It appears that each time a minute order or court notification was issued, Plaintiff's counsel

10  billed at least 0.1 hours (6 minutes) to review it, even when that amount of time was not warranted,

11  and at least 2.1 hours were billed for such review.  For example, on June 4, 2019, Ms. Kersting

12  billed 0.2 hours (12 minutes) to review a two-sentence minute order continuing the scheduling

13  conference.  (Doc. 15; Doc. 113 at 11.)  On May 19, 2020, Ms. Passalacqua billed 0.1 hours (6

14  minutes) for reviewing the following notice: "INTERPLEADER DEPOSIT RECEIVED (28 U.S.C.

15  Section 1335) in the amount of $115448.94."  (Doc. 40; *see* Doc. 113 at 41 (narrative: "Receive

16  court's order indicating deposit of interpleader funds.").)  It defies belief that a partner at a law firm

17  and an attorney with nearly 30 years of experience would require at least six minutes to review a

18  few words or sentences.

19      Similarly, time billed for reviewing other court orders and documents filed by Defendants

20  was excessive.  For example, Ms. Passalacqua billed 0.1 hours each for the receipt of various

21  statements of non-opposition and consents to magistrate jurisdiction.  (*See* Doc. 113 at 26, 41, 43.)

22  Ms. Kersting billed 0.1 hours each for receiving and reviewing waivers of service.  (*See id.* at 10,

23  11, 12.)  On July 16, 2019, Ms. Passalacqua billed 0.2 hours (12 minutes) for communicating with

24  Ms. Kersting "regarding proper file number" and then another 0.2 hours "to correct case number."

25  (*See id.* at 12.)  The Court notes that completing most of these tasks takes a very minimal amount

26  of time each, and may not even have been appropriate for billing.

27      Based on the foregoing, the Court will deduct 54.2 hours for time spent on non-recoverable

28  tasks and unreasonably billed time.

**b.      Compensable Tasks**

As mentioned above, the scope of expenses that are compensable in an interpleader action is limited.  *Tise*, 234 F.3d at 426.  In accordance with the Ninth Circuit's rule in *Tise*, the Court will allow some recovery for the following tasks: preparing the complaint and the motion to deposit funds; obtaining service of process on the claimants; preparing for and attending the Rule 26(f) conferences; and preparing the motion for discharge and dismissal.

**i.      Preparing the Complaint**

"Drafting an interpleader complaint should be a straight-forward process.  Indeed, in addition to the jurisdiction and venue allegations, the plaintiff-in-interpleader need only allege that conflicting demands were made to a particular fund or property held by the plaintiff as a stakeholder, that a real and reasonable risk exists of multiple liability, and make an appropriate demand for relief."  *Chase Inv. Servs. Corp.*, 2010 WL 11597568, at *8.  Here, Plaintiff's counsel spent 12.0 hours preparing an eight-page complaint with twelve exhibits (*see* Doc. 1).  Ms. Ferrari expended 5.3 hours total researching the factual basis for the complaint, drafting the complaint, and preparing all of the exhibits.  (Doc. 113 at 6, 7, 9.)  Ms. Kersting subsequently spent 6.7 hours reviewing, revising, and finalizing the complaint and exhibits.  (*Id.* at 7, 9.)

The Court finds the amount of time spent by Ms. Kersting on the complaint to be excessive. Ms. Kersting, an experienced partner, expended more time reviewing and editing the complaint than it took Ms. Ferrari, then a first-year associate, to research and draft the entire pleading.  As the complaint is not a particularly complex document, consisting primarily of factual allegations, Ms. Kersting's lengthy review was not justified.  It also appears that of the 6.7 hours billed, 0.9 hours was spent on preparing the complaint for filing, which is a non-compensable clerical task.  (*See* Doc. 113 at 9.)  Accordingly, the Court will award Ms. Ferrari 5.3 hours and Ms. Kersting 1.5 hours for their respective work on the complaint.

**ii.      Motion to Deposit Funds**

Ms. Passalacqua spent 3.3 hours preparing the motion to deposit the Annuity funds.  (Doc. 113 at 29, 30.)  The Court finds the amount of time expended to be excessive, given that the motion is approximately 1.5 pages (with the caption and attorney information).  (*See* Doc. 58.)  The motion

1   to deposit funds is a simple document, containing only factual statements and no law or legal

2   analysis.  *See Dusseldorp v. Ho*, 4 F. Supp. 3d 1069, 1071–72 (S.D. Iowa 2014) (observing that a

3   motion to deposit interpleaded funds does not involve complex issues of fact or law).  Therefore,

4   the Court will award Ms. Passalacqua 1.0 hour for her work on the motion to deposit funds.

5        The records also indicate that Mr. Ernette billed 1.3 hours for drafting a "motion for entry

6   of order for deposit of the funds" on July 1, 2019 (*see* Doc. 113 at 12), but no such filing was made

7   with the Court around that time, and Ms. Passalacqua appears to have drafted anew the motion to

8   deposit funds that was ultimately filed with the Court in March 2020 (*see id.* at 29 (narrative for Ms.

9   Passalacqua on March 10, 2020 states, "Draft motion for deposit")).  Thus, the Court will not award

10   Mr. Ernette any time for working on a motion to deposit funds, as it would be duplicative of Ms.

11   Passalacqua's work.  *See Cervantes v. Vargas*, No. 117CV00923LJOSKO, 2018 WL 2455615, at

12   *5 (E.D. Cal. June 1, 2018) (hours that "excessive, redundant, or otherwise unnecessary" should be

13   excluded from the lodestar amount) (quoting *Hensley*, 461 U.S. at 434).

14                          **iii.**     **Service**

15        The Court estimates that Plaintiff's counsel spent 39.1 hours obtaining service of process on

16   the Defendants.  That number includes, in part, time spent on obtaining entries of default as to some

17   claimants, dismissing English from the case, and preparing the motion for service of Florence by

18   publication and effectuating service.  The Court recognizes that service was more challenging when

19   compared to a typical case—given the number of pro se defendants.  Nonetheless, the Court will

20   reduce the hours requested because an unreasonable number of hours was billed for some of the

21   tasks performed.

22        For example, Ms. Passalacqua expended 13.1 hours preparing two motions for service of

23   Florence by publication.  The Court declines to award all of the time requested because the first

24   motion was denied due to counsel's failure to comply with the relevant requirements and include

25   sufficient information to justify service by publication.  (*See* Doc. 40.)  Furthermore, the time billed

26   for working on the motions was unreasonable.  The first motion was two pages and accompanied

27   by a 1.5 page declaration (with the caption) (Docs. 39 & 39-1), on which Ms. Passalacqua expended

28   4.7 hours (*see* Doc. 113 at 15–18).  The second motion for service by publication was approximately

three pages and accompanied by an approximately two-page declaration with two exhibits (affidavits of unsuccessful service).  (Docs. 81 & 81-1.)  Ms. Passalacqua billed 8.4 hours for her work on the latter motion (*see* Doc. 113 at 43–44), which the Court finds excessive since the second motion and declaration are substantially similar to the first motion and declaration, other than the addition of approximately two pages of factual statements and the exhibits.  The Court concludes that an award of 5.3 hours reasonably compensates Ms. Passalacqua for her efforts on the motions for service by publication.

The 7.3 hours expended by Ms. Passalacqua on preparing three requests for entry of default (for Raymond, Lee, and Florence) and one notice of voluntary dismissal (of English) are also unreasonable.  Each request for entry of default is less than two pages, and the content of each accompanying declaration is largely duplicative of that in the entry-of-default request.  (*See* Docs. 30, 30-1, 31, 31-1, 101, 101-1.)  The Court also notes that the requests for Raymond and Lee are six sentences each and appear to be identical other than the name of the defendant for which entry of default was being requested.  (*See* Docs. 30 & 31.)  The notice of voluntary dismissal of English is four sentences long (*see* Doc. 32), and the Court cannot comprehend why it took an experienced attorney at least 0.9 hours (54 minutes) (*see* Doc. 113 at 14, 15) to prepare such a routine notice. The 0.7 hours (included in the 7.3 hour total noted above) billed by Ms. Passalacqua to prepare a one-sentence statement of non-opposition to Raymond's motion to set aside the entry of default (Doc. 76) and "confirm service issues on all parties" is likewise excessive and unreasonable (*see* Doc. 113 at 42).  The Court finds that 1.2 hours would be more than reasonable to prepare all of these documents.  *See Cervantes*, 2018 WL 2455615, at *6 (finding ".50 hours (30 minutes) for drafting a routine request for entry of default judgment to be excessive").

As for the remaining 18.7 hours spent by Plaintiff's counsel on various tasks related to effectuating service, some of the time expended was excessive or unnecessary given the work performed and should be reduced.  For example, Ms. Kersting expended 0.6 hours researching the date of English's death and the addresses at which service attempts were made and communicating that information to Ms. Passalacqua.  (*See* Doc. 113 at 14, 17.)  Ms. Passalacqua billed 7.9 hours for preparing and sending documents to, and communicating with, two sheriff's offices to serve

1   Florence prior to the motion for service of publication.  (*See id.* at 20–22, 24, 26, 39.)  "[P]reparing
2   and sending documents to the process server and speaking to the process server are appropriate
3   clerical tasks."  *Cervantes*, 2018 WL 2455615, at *6.  On November 4, 2019, Ms. Passalacqua billed
4   0.8 hours for preparing waiver-of-service documents for Daisy and Ronald—which requires little
5   more than the entry of names and dates.  (*See* Docs. 36 & 37, Doc. 113 at 15.)

6        The Court notes that some of Ms. Passalacqua's entries are presented in block-billing format.
7   (*See* Doc. 113, entries for January 22, 2020, June 22 and 29, 2020; and July 28, 2020.)  For example,
8   on June 29, 2020, Ms. Passalacqua billed 2.1 hours with the following narrative description:
9   "Communications with Fresno Bee for publication information, requirements and fees; review of
10  order and requirements for documents to publish in order to effectuate service; email communication
11  to Fresno Bee legal notice department;[ ]Edits to summons for JD Florence for publication."  (*Id.* at
12  48.)  "Block billing, which bundles tasks in a block of time, makes it extremely difficult for a court
13  to evaluate the reasonableness of the number of hours expended."  *Aranda v. Astrue*, No. CV 08–
14  340–MA, 2011 WL 2413996, at *5 (D. Or. June 8, 2011).  In situations involving documentation
15  with block-billing, the court should either request more information or "simply reduce[ ] the fee to
16  a reasonable amount."  *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (citing
17  *Hensley*, 461 U.S. at 433 for the proposition that a district court can "reduce" the fee award where
18  the documentation is inadequate).  Based on a review of the time records, including the discussion
19  included herein, the Court finds that an award of 4.5 hours is appropriate to compensate Ms.
20  Passalacqua for the hours reasonably expended in effectuating service of Florence by publication
21  and addressing any other service-related matters (*e.g.*, the retention of a private investigator to locate
22  Florence).

23       Accordingly, Ms. Passalacqua will be awarded 11.0 hours, and Ms. Kersting 0.9 hours, for
24  their time expended on obtaining service of process of the Defendants.

25                    **iv.    Scheduling Conferences**

26       Ms. Passalacqua billed 31.9 hours for work related to preparing for and attending the four
27  scheduling conferences held in this case, including conferring with Defendants and submitting six
28  joint scheduling reports.  Four of the reports were approximately two pages in length, and the two

others were eight pages long.  The Court will reduce the time awarded because several of the billing entries are excessive or unnecessary, as highlighted by the following examples:

- For the first 1.5-page report (with the caption and attorney information) filed on February 6, 2020, Ms. Passalacqua billed 4.2 hours researching and preparing the document, which contained no legal authority or legal arguments.  (Doc. 113 at 20–22.)

- On February 6, 2020, in a particularly egregious example, Ms. Passalacqua recorded that it took her 0.3 hours (18 minutes) to "[r]eceive and review" the Court's five-sentence minute order requesting an amended joint scheduling report (Doc. 43), and that she spent 0.7 hours (42 minutes) reviewing the Court's Order Setting Mandatory Scheduling Conference (Doc. 5).  (Doc. 113 at 22.)  The Court notes that, the week prior, on January 30, 2020, Ms. Passalacqua had already billed 0.3 hours for reviewing that same order. (*Id.* at 20.)

- Ms. Passalacqua billed 1.0 hour to prepare a letter to Defendants to set up a conference call—a task that should have taken a few minutes at most—and 0.5 hours to locate their email addresses.  (Doc. 113 at 22.)

- Ms. Passalacqua expended 2.1, 2.6, and 3.2 hours to prepare the approximately two-page reports (*see* Doc. 113 at 27, 35, 36, 37, 45–46) filed on March 3, 2020, April 23, 2020, and June 23, 2020, respectively (Docs. 50, 61, 88).  These reports contain only factual statements and there is overlap between them.

- Ms. Passalacqua billed 4.3 hours to prepare the eight-page joint scheduling report (*see* Doc. 113 at 46–48) filed on June 26, 2020 (Doc. 93), six pages of which appear to be substantially similar to the Amended Scheduling Report filed on February 12, 2020, (Doc. 44), with modifications to the proposed dates.

Therefore, based on the Court's experience with this action and review of the time records, the Court finds that an award of 11.2 hours reasonably compensates Ms. Passalacqua for her work related to preparing for and attending the scheduling conferences.

### v.      Motion for Discharge and Dismissal

"Drafting an Interpleader motion should also be a relatively formulaic process that, under

1  the usual circumstances, should only take a few hours."   *Chase Inv. Servs. Corp.*, 2010 WL

2  11597568, at *8 (C.D. Cal. June 10, 2010).   Ms. Passalacqua expended 5.3 hours preparing the

3  motion for discharge and dismissal, which the Court finds reasonable.

4       **c.   Total Attorney's Fees**

5       In sum, Plaintiff should be awarded attorneys' fees as follows:

| Attorney | Rate | Hours | Fees |
|---|---|---|---|
| Kersting | $325 | 2.4 | $780.00 |
| Passalacqua | $300 | 28.3 | $8490.00 |
| Ernette | $195 | 0.0 | $0.00 |
| Ferrari | $175 | 5.3 | $927.50 |
| | | | $10,197.50 |

13       Accordingly, Plaintiff is awarded attorneys' fees in the total amount of $10,197.50.   This

14  amount constitutes 8.8 percent of the funds deposited with the Court, "which is in line with Ninth

15  Circuit authority, and the award adequately compensates [Plaintiff] for its bona fide expenditures as

16  a disinterested interpleader plaintiff."   *State Farm Life Ins. Co. v. Cai*, No. 09–CV–00396–LHK,

17  2013 WL 4782383, at *3 (N.D. Cal. Sept. 6, 2013) (reducing fee award from $25,000 to $15,000

18  for an award of "more than 4% of the fund"); *see Tise*, 234 F.3d at 415 (upholding award of 0.8

19  percent of $365,000 fund).

20  **D.     Future Proceedings**

21       After the stakeholder is discharged, procedurally the court moves on to the second stage of

22  an interpleader proceeding involving the adjudication of the adverse claims of the defendant

23  claimants.   *Billini*, 2007 WL 4209405, at *2; *Lincoln Nat'l Life Ins. Co. v. Graham*, No. 2:12–cv–

24  2177–SVW–RZ, 2013 WL 12132047, at *3 (C.D. Cal. Jan. 3, 2013).   "Absent special

25  circumstances, the second phase 'proceeds like any other action.   Accordingly, when there is no

26  genuine issue of material fact that justifies continuing to trial, the second stage may be adjudicated

27  on a summary judgment motion.   [O]therwise, the dispute will be tried[.]' "   *Lincoln Nat'l Life Ins.

28  *Co.*, 2013 WL 12132047, at *3 (internal brackets and ellipsis omitted) (quoting 7 Charles Alan

1  Wright, Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 1714 (3d ed. 2001)).

2    Following the discharge of Plaintiff, the Court will conduct the second stage of the

3  interpleader action and determine the adjudication of any adverse claims.  As a reminder to the

4  parties, all non-dispositive and dispositive motions are to be filed by March 17, 2021.  (*See* Doc.

5  112).  In addition, pursuant to the Amended Scheduling Order (Doc. 112), the Parties were to

6  propose dates for a Settlement Conference by November 12, 2020, but they failed to do so.  The

7  Court will direct the parties to propose dates for the Conference, as set forth below.

8          **IV.    CONCLUSION AND ORDER**

9    Based on the foregoing, Plaintiff's motion for an order of discharge and dismissal is

10  GRANTED and the motion for an award of attorneys' fees and costs is GRANTED IN PART.  The

11  Court hereby ORDERS as follows:

12    1. Plaintiff is DISCHARGED and DISMISSED WITH PREJUDICE from this action;

13    2. Defendants are ENJOINED and PERPETUALLY RESTRAINED from instituting

14      any future suits against Plaintiff with respect to the Annuity and its proceeds;

15    3. Plaintiff is AWARDED $10,197.50 in attorneys' fees, to be deducted and paid from

16      the funds deposited with the Court, made payable via a check to "Principal Life

17      Insurance Company," and mailed forthwith to Plaintiff's counsel of record, Lisa

18      Silva Passalacqua, Wilson, Elser, Moskowitz, Edelman & Dicker LLP; and

19    4. The defendant claimants are to discuss the advantages of and possibilities for

20      settlement with each other and propose a date on which a Settlement Conference will

21      be set.  Unless all the parties affirmatively request that the assigned trial judge

22      participate in the conference and waive in writing any claim of disqualification on

23      that basis to act as the trial judge in the action thereafter, the assigned trial judge shall

24      not conduct the settlement conference. *See* E.D. Cal. L.R. 270(b).  Accordingly, the

25      Settlement Conference will at this time be set before another Magistrate Judge, who

26      holds Settlement Conferences on Tuesdays and Thursdays at 1:00 p.m.  **By no later**

27      **than March 5, 2021**, the parties shall file a joint statement 1) confirming that they

28      have met and conferred, and 2) setting forth three to four proposed Settlement

1              Conference dates in accordance with the Court's calendar.  An order setting forth the

2              Settlement Conference requirements and procedures will follow.

3

4    IT IS SO ORDERED.

5    Dated:  **February 23, 2021**                                   /s/ *Sheila K. Oberto*

6                                       UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28